# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TRADEBAY, LLC,                    )
                                 )
                 Plaintiff,      )        Case No. 2:11-cv-00702-ECR-PAL
                                 )
vs.                              )        **ORDER**
                                 )
EBAY, INC.,                      )        (Mot to Stay Disc. - Dkt. #21)
                                 )
                 Defendant.      )
_____ )

Before the court is Defendant's Motion to Stay Discovery Pending Disposition of Motion to Dismiss (Dkt. #21).  The court has considered the Motion, Plaintiff's Opposition (Dkt. #22) and Defendant's Reply (Dkt. #23).  Defendant seeks a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure staying discovery pending resolution of its Motion to Dismiss (Dkt. #12) filed June 28, 2011.

## BACKGROUND

The Complaint (Dkt. 1) in this case was filed May 3, 2011, and it seeks declaratory relief. Plaintiff seeks a judgment declaring that its use of the mark in suit will not infringe the rights of Defendant's and that its acts do not constitute trademark infringement.  Complaint ¶ 1.  An Amended Complaint (Dkt. #11) was filed before the Defendant filed an answer or other responsive pleading.  The amended complaint expands the scope of declaratory relief sought and also seeks a preliminary and/or permanent injunction enjoining the Defendant from claiming or charging that Plaintiff has infringed Defendant's trademark rights, unfairly competed, or has in any other respect violated any of Defendant's rights.  Amended Complaint ¶ 1.  Plaintiff alleges that it is a Nevada Corporation with an office in this district and is the owner of all right, title and interest to the trademark TRADEBAY which

/ / /

1   was approved for publication by the United States Patent and Trademark Office ("USPTO") on January

2   27, 2010.  *Id.* ¶ 3.

3          The amended complaint alleges that Plaintiff has made or intends in the future to make

4   considerable expenditures to protect its right in and to its mark.  *Id*. ¶ 4.  The mark is "valid, legally

5   subsisting, and an asset of considerable value to Plaintiff."  *Id*. ¶ 5.  On January 6, 2009, Plaintiff made

6   a formal, written record of its trademark claim and intent to use the mark and filed a trademark

7   application which was issued a U.S. serial number.  *Id*. ¶ 6.  The trademark application was examined,

8   accepted and approved for publication by the USPTO and published as an approved application.  *Id*. ¶

9   7.  Plaintiff is offering and/or intends to offer computerized online services under the mark.  *Id*. ¶ 9.

10          Defendant claims to be the owner of numerous trademarks and trademark registrations which

11   incorporate the eBay mark.  *Id*. ¶ 11.  Defendant asserts that Plaintiff's mark is confusingly similar to

12   Defendant's mark and has asserted, in writing, that Plaintiff's mark infringes Defendant's trademark

13   rights and "further causes dilution and other actionable wrongs."  *Id*. ¶ 12.  Defendant has demanded

14   that Plaintiff permanently cease and desist from all uses of Plaintiff's mark or face legal action.  *Id*.

15   ¶ 13.  Plaintiff "desires to commence and/or expand the volume use of its mark," but "Defendant's past

16   threats now create a substantial impediment of immediate concern to Plaintiff and the use of Plaintiff's

17   approved mark."  *Id*. ¶ 14.  Defendant filed an administrative proceeding to stop Plaintiff's application

18   from going to registration.  *Id*. ¶ 15.  The administrative body, however, does not adjudicate claims of

19   infringement and cannot grant Plaintiff the relief it seeks in this case.  *Id*.  Plaintiff is in reasonable

20   apprehension of litigation, damage to its trademark, and resultant financial loss and harm.  *Id*. ¶ 16.

21   Defendant's acts have an adverse impact on the public interest, prevent full and fair competition, and

22   require the court's immediate intervention to declare the rights and obligations of the parties.  *Id*. ¶ 19.

23          The Defendant responded to the amended complaint by filing a Motion to Dismiss (Dkt. #12).

24   A briefing schedule was approved by the district judge, and the motion is now fully briefed and under

25   submission to him.  The motion to dismiss raises the preliminary issue of the court's subject matter

26   jurisdiction.  Defendant's motion to stay asserts that the motion to dismiss is meritorious, potentially

27   dispositive of the entire case, and can be decided without any discovery.  Additionally, this case is at the

28   pleading stage, and the Defendant has not yet filed an answer or counterclaim, no party has served any

2

1  discovery, discovery is not required to decide the pending motion, and a stay will preserve the time and

2  resources of the court and the parties.  Finally, Defendant argues that an evaluation of the merits of the

3  pending motion to dismiss weighs in favor of granting a stay.

4    Plaintiff opposes the motion, arguing it initiated this action to seek a declaration that its mark

5  does not infringe or dilute eBay's marks.  This lawsuit was filed after Plaintiff received cease and desist

6  letters from eBay accusing it of infringing and diluting eBay's marks and threatening legal action unless

7  Tradebay stopped using the Tradebay mark.  Plaintiff contends that eBay's motion to dismiss reverses

8  its position in arguing that Tradebay's complaint fails to present a live case or controversy and therefore

9  deprives this court of subject matter jurisdiction.  Plaintiff maintains that the court may stay discovery

10  only if there is no question that eBay will succeed on the motion to dismiss.  Plaintiff claims that eBay's

11  motion to dismiss disregards the accusations and threats it made against Tradebay and relies on an

12  incorrect legal standard from the Federal Circuit which has been rejected by both the Ninth Circuit and

13  the United States Supreme Court.  Therefore, eBay is unlikely to win the motion to dismiss.  Plaintiff

14  also contends that because no discovery requests have been served, the court lacks the ability to assess

15  whether any requested discovery will prejudice the Defendant.  Therefore, a stay is inappropriate.

16  Finally, Plaintiff argues that eBay has failed to meet its burden of showing it is entitled to a protective

17  order under Rule 26 because eBay has not persuasively or convincingly explained it will win its motion

18  to dismiss, and because eBay has failed to point out any specific facts showing that extraordinary

19  justification exists for prohibiting discovery.

20    Defendant filed a Reply (Dkt. #23) which requested expedited resolution because Tradebay

21  declined a request for a short, informal stay of discovery until the court rules on the motion to stay.

22  Tradebay scheduled a Rule 26(f) conference for October 20, 2011, and eBay argues that if it is required

23  to incur the time and expense of discovery before the motion to stay is decided, it will effectively be

24  denied the relief it seeks.  Defendant acknowledges that a pending motion to dismiss is not ordinarily a

25  situation that in and of itself would warrant a stay of discovery.  However, an exception exists where, as

26  here, a motion to dismiss raises preliminary issues of jurisdiction, venue or immunity.  Defendant's

27  motion raises the threshold issue of the court's subject matter jurisdiction and will completely dispose

28  of the case if granted.  Plaintiff does not dispute this or articulate how it would suffer any prejudice if

the court grants a brief stay until the preliminary issue of jurisdiction is resolved.  Defendant reiterates that other factors weigh in favor of a temporary stay.  Specifically, no discovery is needed to decide the motion, the case is merely at the pleading stage, no answer has been filed, no counterclaim is pending, no discovery has been initiated, and there are no other parties to this lawsuit.  Defendant also refutes Plaintiff's arguments concerning the merits of its motion to dismiss.  Finally, Plaintiff has failed to establish it will suffer any prejudice from a short stay of discovery while the motion to dismiss is decided.  On the other hand, Defendant argues that it will be prejudiced if forced to expend time and resources conducting discovery on a case that will be dismissed.

## DISCUSSION

**I.    Motion to Stay Standards.**

The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending.  *Skellercup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal 1995) (stating that if the Federal Rules contemplated a motion to dismiss under Rule 12(b)(6) would stay discovery, the Rules would contain such a provision, and finding that a stay of discovery is directly at odds with the need for expeditious resolution of litigation).

Two published decisions in this district have held that ordinarily, a dispositive motion does not warrant a stay of discovery.  *Twin City Fire Insurance v. Employers of Wasau*, 124 F.R.D 652, 653 (D. Nev. 1989); *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997).  Both of these decisions held that to establish good cause for a stay, the moving party must show more than an apparently meritorious Rule 12(b)(6) motion.  *Id*.  Citing the Ninth Circuit's decision in *Wood v. McEwen,* 644 F.2d 797, 801 (9th Cir. 1981) (*per curiam*), both of these decisions held that a district court may stay discovery only when it is *convinced* that the Plaintiff will be unable to state a claim for relief (emphasis added).  Common situations in which a court may determine that staying discovery pending a ruling on a dispositive motion occur when dispositive motions raise issues of jurisdiction, venue, or immunity.  *Id*.

On the other hand, the Ninth Circuit has held that under certain circumstances, a district court abuses its discretion if it prevents a party from conducting discovery relevant to a potentially dispositive motion.  *See Alaska Cargo Transport, Inc. v. Alaska R.R., Corp.*, 5 F.3d. 378, 383 (9th Cir. 1993)

(stating the district court would have abused its discretion in staying discovery if the discovery was relevant to whether or not the court had subject matter jurisdiction); *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir. 1987) (holding district court did not abuse its discretion in denying discovery when the complaint did not raise factual issues requiring discovery to resolve); *Kamm v. Cal City Dev. Co.,* 509 F.2d 205, 210 (9th Cir. 1975) (holding the propriety of a class action cannot be determined in some cases without discovery, and to deny discovery in such cases is an abuse of discretion); *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977) (stating that the better and more advisable practice is for the district court to allow litigants an opportunity to present evidence concerning whether a class action is maintainable, and that such an opportunity requires "enough discovery to obtain the material").

The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery. *Rutman Wine Co. v. E & J Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987). The Ninth Circuit has held that discovery at the pleading stage is only appropriate where factual issues are raised by a Rule 12(b) motion, and a pending Rule 12(b) motion to dismiss is sufficient cause for granting a protective order. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds, Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).

Under Federal Rule of Civil Procedure 26(c), the court may limit the scope of disclosures or discovery on certain matters and prevent certain matters from being inquired into upon a showing of good cause or where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. The district court has wide discretion in controlling discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Staying discovery when a court is convinced that the plaintiff will be unable to state a claim for relief furthers the goal of efficiency for the court and the litigants. *Id.*

It is well-established that a party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied. *Turner*, 175 F.R.D. at 556 (*citing Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). A showing that discovery may involve some

1    inconvenience and expense does not suffice to establish good cause for issuance of a protective order.

2    *Id.; Twin City*, 124 F.R.D. at 653.  Rather, a party seeking a protective order must show a particular and

3    specific need for the protective order, and broad or conclusory statements concerning the need for

4    protection are insufficient.  *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990).

5            To summarize, the Ninth Circuit has held that a district court may enter a protective order

6    staying discovery when a motion to dismiss for failure to state a claim on which relief may be granted is

7    pending if the district court "is convinced that the plaintiff will be unable to state a claim for relief."

8    *Wood v. McEwen,* 644 F.2d at 801.  The Ninth Circuit has also held that under certain circumstances it

9    is an abuse of discretion to deny discovery while a dispositive motion is pending.  Finally, the Ninth

10   Circuit has held that the purpose of a Rule 12(b)(6) motion is to enable a Defendant to challenge the

11   legal sufficiency of a complaint without subjecting itself to discovery.  The court's research has not

12   found a Ninth Circuit case announcing the factors a court should apply in deciding a motion to stay

13   discovery while a dispositive motion is pending.

14           Federal district courts in the Northern and Eastern Districts of California have applied a two-

15   part test when evaluating whether discovery should be stayed.  *See, e.g.*, *Mlenjnecky v. Olympus*

16   *Imaging America, Inc.*, 2011 WL 489743 at *6 (E.D. Cal. Feb. 7, 2011) (collecting cases).  First, the

17   pending motion must be potentially dispositive of the entire case or at least dispositive on the issue on

18   which discovery is sought.  Second, the court must determine whether the pending potentially

19   dispositive motion can be decided without additional discovery.  In applying this two-factor test, the

20   court deciding the motion to stay must take a "preliminary peek" at the merits of the pending

21   dispositive motion to assess whether a stay is warranted.  If the party moving to stay satisfies both

22   prongs, a protective order may issue; otherwise, discovery should proceed.  *Id*.

23           Other courts in the Ninth Circuit have applied a more lenient standard in determining whether a

24   motion to stay should be granted pending a resolution of a potentially dispositive motion.  *See*, *e.g.,*

25   *GTE Wireless, Inc. v. Qualcom, Inc.,* 192 F.R.D. 284, 286 (S.D. Cal. 2000) (stating the court should

26   "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there

27   appears to be an *immediate and clear possibility* that it will be granted." *Id*. (*citing Feldman v. Flood*,

28   176 F.R.D. 651, 652 (M.D. Fla. 1997) (emphasis in original).

1    In still a third approach, a judge in the Central District of California has held the court should

2    evaluate a request for a stay applying several factors on a case-by-case basis. *See Skellercup*, 163

3    F.R.D. at 601.  In *Skellercup,* the court adopted the approach taken in an Eastern District of New York

4    decision in *Hachette Distributing v. Hudson County News Co.,* 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

5    These decisions recognize that discovery should be stayed while a dispositive motion is pending "only

6    when there are no factual issues in need of further immediate exploration, and the issues before the

7    Court are purely questions of law that are potentially dispositive." *Hachette*, 136 F.R.D. at 356.  In

8    determining whether a stay of discovery pending the outcome of a dispositive motion is warranted, a

9    case-by-case analysis is required because the inquiry is necessarily fact-specific and depends on the

10   particular circumstances and posture of each case.  *Id.*  These decisions suggest that the court should

11   consider the following, non-exhaustive list of factors: the type of pending dispositive motion and

12   whether it is a challenge as a matter of law or to the sufficiency of the complaint allegations; the nature

13   and complexity of the action; whether counterclaims and/or cross-claims have been asserted; whether

14   some or all of the defendants join in the request for a stay; the posture or stage of the litigation; the

15   expected extent of discovery in light of the number of parties and complexity of the issues in the case;

16   and any other relevant circumstances.  *Id.*

17   In evaluating the propriety of an order staying or limiting discovery while a dispositive motion

18   is pending, this court considers the goal of Rule 1 of the Federal Rules of Civil Procedure which directs

19   that the Rules shall "be construed and administered to secure the just, speedy, and inexpensive

20   determination of every action."  *Id.*  Discovery is expensive.  This court is persuaded that the standard

21   enunciated by Judges Reed and Hunt in *Twin City* and *Turner* should apply in evaluating whether a stay

22   of discovery is appropriate while a dispositive motion is pending.  A stay of all discovery should only

23   be ordered if the court is "convinced" that a plaintiff will be unable to state a claim for relief.  However,

24   as the court in *Mlenjnecky* recognized, taking a "preliminary peek" and evaluating a pending dispositive

25   motion puts a magistrate judge in an awkward position.  2011 WL 489743 at *6.  The district judge will

26   decide the dispositive motion and may have a different view of the merits of the underlying motion.

27   Thus, this court's "preliminary peek" at the merits of the underlying motion is not intended to prejudge

28   its outcome.  Rather, this court's role is to evaluate the propriety of an order staying or limiting

7

1  discovery with the goal of accomplishing the objectives of Rule 1.  With Rule 1 as its prime directive,

2  this court must decide whether it is more just to speed the parties along in discovery and other

3  proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery

4  and other proceedings to accomplish the inexpensive determination of the case.

5       The explosion of Rule 12(b)(6) motions in the wake of *Bell Atlantic Corp v. Twombly*, 550 U.S.

6  544 (2007), and *Ashcroft v. Iqbal*, 129 S.C. 1937 (2009), has made speedy determinations of cases

7  increasingly more difficult.  Prohibiting or delaying all discovery will often cause unwarranted delay,

8  especially if a pending dispositive motion challenges fewer than all of Plaintiff's claims.  The fact that a

9  non-frivolous motion is pending is simply not enough to warrant a blanket stay of all discovery.  With

10  these principles in mind, the court will take a "preliminary peek" at Defendant's pending motion to

11  dismiss.

12  **II.  Defendant's Motion to Dismiss.**

13       The Defendant's motion to dismiss asserts that the amended complaint fails to allege facts

14  sufficient to state a claim upon which relief may be granted for declaratory judgment and that the court

15  lacks subject matter jurisdiction under the Declaratory Judgment Act and Article III of the United States

16  Constitution.  The motion argues that the Declaratory Judgment Act is reserved for cases of actual

17  controversy, and here, the amended complaint fails to allege facts sufficient to show that a real and

18  substantial controversy exists to warrant declaratory relief.  The motion contends that, to establish an

19  actual controversy in matters involving trademarks, a declaratory judgment plaintiff must allege facts

20  showing that it has taken specific steps that evidence a concrete intention to use the mark at issue in

21  commerce.  In this case, Defendants argue, the trademark application involved in the amended

22  complaint is merely an "intent to use" application filed by a different entity than the named Plaintiff in

23  this case.  Plaintiff is a Nevada limited liability company, and the entity filing the intent to use

24  application is Tradebay, Inc., a Florida corporation.

25       Defendant argues the Plaintiff has not pled sufficient facts to establish an actual case or

26  controversy exists under the Federal Circuit's two-prong test announced in *Windsurfing Int.'l v. AMF,*

27  *Inc.*, 828 F.2d 755 (Fed. Cir. 1987).  Under this two-prong test, a declaratory judgment plaintiff must

28  establish: 1) that it has a "real and reasonable apprehension" of litigation; and 2) that it has engaged in a

1    course of conduct that has brought it into "adversarial conflict" with a declaratory judgment defendant.

2    The motion to dismiss attacks the second prong of the test and argues that Plaintiff's amended

3    complaint does not plead sufficient facts to show that Plaintiff has a definite intent and apparent ability

4    to begin using the mark.  Thus, Plaintiff cannot establish subject matter jurisdiction under the

5    Declaratory Judgment Act or Article III of the Constitution and is, in effect, requesting an advisory

6    opinion from the court.

7        Plaintiff filed a response to the motion to dismiss pointing out that Defendant eBay sent its first

8    threatening letter less than a month after Tradebay filed its first trademark application and asserts that

9    the Defendant continues to threaten Tradebay with litigation.  On January 30, 2009, eBay sent a cease

10   and desist letter to Tradebay's counsel claiming that Tradebay's actions constitute trademark

11   infringement and dilute the distinctiveness of the eBay mark.  The cease and desist letter was sent after

12   Tradebay, Inc., a Florida corporation, filed its initial application with the USPTO January 6, 2009,

13   requesting approval of its Tradebay mark.  Tradebay, Inc. was converted to Tradebay, LLC on March

14   30, 2011, by filing Articles of Conversion with the Nevada Secretary of State, and is therefore, the

15   holder of all Tradebay, Inc.'s assets, including the mark at issue in this lawsuit.

16       Plaintiff argues that in the Ninth Circuit, the Plaintiff must only plead a real and reasonable

17   apprehension that it will be subject to liability and need not show it had a real and reasonable

18   apprehension of litigation to establish subject matter jurisdiction.  Plaintiff claims that the Ninth Circuit

19   has expressly rejected the second prong of the Federal Circuit test, citing *Chesebrough-Pond's, Inc. v.*

20   *Faberge, Inc.*, 666 F.2d 393 (9th. Cir. 1982), and *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151 (9th

21   Cir. 2007).

22       **A.    The Declaratory Judgment Act**

23       The question before the district judge in the motion to dismiss is whether the facts alleged in the

24   amended complaint establish that there is a justiciable case or controversy within the meaning of the

25   Declaratory Judgment Act and Article III of the Constitution.  The Declaratory Judgment Act confers

26   authority on any court of the United States to "declare the rights and other legal relations of any

27   interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.

28   § 2201(a).  However, it requires the party seeking declaratory relief to establish "a case of actual

9

controversy" within the court's jurisdiction. *Id*. The Declaratory Judgment Act is not an independent basis for subject-matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-72 (1950). Rather, the party seeking declaratory judgment must establish that the court has jurisdiction from some other source. *Aetna,* 300 U.S. at 240 (1937). The Declaratory Judgment Act was signed into law in 1934 and upheld as constitutional by the Supreme Court in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227 (1937).

### B.    Article III

The subject-matter jurisdiction of the courts of the United States is limited by Article III of the Constitution, which restricts federal judicial power to the adjudication of "Cases" or "Controversies." U.S. Constitution, Article III § 2. The Supreme Court has explained that the phrase "cases of actual controversy" in the Declaratory Judgment Act simply affirms that the court's subject-matter jurisdiction is limited to any case or controversy that is justiciable under Article III. *See Aetna*, 300 U.S. at 239-40 (stating that the phrase "cases of actual controversy" in the Declaratory Judgment Act refers "to controversies which are such in the constitutional sense"). Thus, a federal court has jurisdiction over a declaratory judgment action if a lawsuit meets the case or controversy requirement of Article III. *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330, 1340 (Fed.Cir. 2007).

In 2007, the Supreme Court addressed the scope of the court's jurisdiction over declaratory judgment actions in a patent case in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct 764 (2007). *MedImmune* acknowledged that *Aetna* and other cases following it had not established "the brightest lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *Id*. at 127. However, *MedImmune* reaffirmed that the proper test for subject matter jurisdiction in a declaratory judgment action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

MedImmune was a manufacturer of a drug, Synagis, used to prevent respiratory tract disease in infants and young children. In 1997, MedImmune entered into a patent licence agreement with Genentech which allowed it to manufacture, use and sell licensed products under the agreement in

10

1  return for royalty payments.  The license agreement gave MedImmune the right to terminate on six-

2  months written notice.  In December 2001, Genentech sent MedImmune a letter indicating that it

3  believed Synagis was covered by an application that had matured into a patent and expected

4  MedImmune to begin making royalties beginning March 1, 2002.  MedImmune did not believe it owed

5  Genentech any royalties because the patent Genentech relied upon was invalid and unenforceable and

6  because Synagis did not infringe the patent.  However, MedImmune considered the letter from

7  Genentech a clear threat to enforce the patent, terminate the 1997 license agreement, and sue for patent

8  infringement if it did not make the royalty payments as demanded.  MedImmune paid the demanded

9  royalties under protest and with a reservation of all of its rights and filed a declaratory-judgment action.

10      The Supreme Court held that the factual and legal dimensions of the parties' disputes were well-

11  defined and that MedImmune had established a case or controversy within the meaning of Article III.  It

12  reversed the Federal Circuit, which had held a case or controversy did not exist because MedImmune

13  continued to make the royalty payments.  The Court found that Genentech's letter was a clear indication

14  that it intended to enforce the disputed patent, terminate the license agreement, and bring a patent

15  infringement action against MedImmune if Genentech did not pay royalties.  A patent infringement

16  action could have resulted in MedImmune being ordered to pay treble damages and attorneys fees, as

17  well as being enjoined from selling Synagis, which accounted for more than eighty percent of its sales

18  revenue.  Under these circumstances, the Supreme Court held that MedImmune was not required, under

19  Article III, to break or terminate its 1997 license agreement before seeking a declaratory judgment that

20  the underlying patent was invalid, unenforceable or not infringed, and the Court of Appeals erred in

21  dismissing the action for lack of subject-matter jurisdiction.

22      In reversing the Federal Circuit, the Supreme Court overruled the Federal Circuit's reasonable-

23  apprehension-of-suit test.  The Supreme Court found that the Federal Circuit's reasonable apprehension

24  of suit test conflicted with its prior holding in *Maryland Casualty*, *Aetna* and *Cardinal Chemical Co. v.*

25  *Morton Int'l., Inc.,* 508 U.S. 83, 98 (1993).  *Id* at 132.

26      Subsequent federal circuit cases have acknowledged that *MedImmune* effectively overruled the

27  reasonable apprehension-of-suit test and held that all of the circumstances must be considered in each

28  / / /

11

1    individual case.  For example, in *Revolution Eye Wear, Inc. v. Aspects Eye Wear, Inc.,* the Federal

2    Circuit examined *MedImmune* and acknowledged:

3           The Court explained that the Federal Circuit's requirements, specific
            to patent cases, that there be both a threat or other action by the
4           patentee sufficient to create a reasonable apprehension of
            infringement suit, and present activity that could constitute
5           infringement or concrete steps taken with the intent to conduct such
            activity, were more rigorous than warranted by the principle and
6           purpose of declaratory actions.  The Court held that all of the
            circumstances must be considered for each particular case.

7

8    556 F.3d 1294, 1297; *see also Innovative Therapies, Inc. v. Connetic Concepts, Inc.,* 599 F.3d, 1377,

9    1382 (Fed. Cir. 2010) ("the specific facts of each case must be considered, in deciding whether a

10   declaratory action is warranted."); *Prasco, LLC v. Medicis, a Pharmaceutical Corp.*, 537 F.3d 1329,

11   1335 (Fed. Cir. 2008) (stating that although *MedImmune* rejected the reasonable apprehension-of-suit

12   test, it remains one of multiple ways that a declaratory judgment plaintiff can meet the totality-of-

13   circumstances test to establish the existence of an Article III case or controversy).

14          Plaintiff's opposition to the motion to dismiss relies on two Ninth Circuit decisions decided

15   before *MedImmune* and one decision decided after it–*Societe de Conditionnement en Alumnium v.*

16   *Hunter Engineering, Co.*, 655 F.2d 938 (9th Cir. 1981); *Cheeseburough-Ponds, Inc. v. Faberge, Inc.,*

17   666 F.2d 393 (9th Cir. 1982); *Rhoades v. Avon Products, Inc.,* 504 F.3d 1151 (9th Cir. 2007).  In each

18   case, the Ninth Circuit found that a declaratory judgment plaintiff had established a *prima facae* case or

19   controversy within the meaning of Article III.  However,  these cases are clearly distinguishable from

20   the jurisdictional facts alleged by Plaintiff in this case.  In *Societe*, the plaintiff was an actual

21   manufacturer of a product that was alleged to infringe the patent owned by the defendant, and plaintiff

22   was threatened with patent litigation.  Citing the Supreme Court's decision in *Maryland Casualty*, the

23   Ninth Circuit found that under all of the circumstances, there was a substantial controversy between the

24   parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a

25   declaratory judgment.  However, the Ninth Circuit recognized that "the more acute case or controversy

26   problem" arises when a plaintiff has not yet begun to manufacture or make preparations to manufacture

27   the patented product, stating "[i]n that situation, the plaintiff is asking the court to render an advisory

28   opinion."  *Id*. at 944.

12

1     Similarly, in *Cheeseborough-Ponds*, it was undisputed that the declaratory-judgment plaintiff

2  was using the disputed mark in commerce and had spent approximately $650,000.00 in its initial

3  investment in developing a product line for the mark.  The defendant sent the plaintiff a threatening

4  letter after receiving notice of the pending registration of the mark, asserting it was confusingly similar

5  and demanding that the application be withdrawn or it would file an opposition to registration in the

6  Patent and Trademark Office.  The Ninth Circuit found that because the letter sent by the defendant to

7  the plaintiff declared its intent to file opposition proceedings, stated a *prima facae* case for trademark

8  infringement, alleged its own ownership of a registered mark, and claimed plaintiffs were using the

9  mark in commerce, an actual case or controversy was established.  The court concluded that, although

10  the defendant had not actually threatened Cheeseborough with a lawsuit for trademark infringement,

11  Cheeseborough had a real and reasonable apprehension of a lawsuit, and that the court's failure to

12  resolve the parties' dispute would force Cheeseborough to choose between continuing to forego

13  competition in a quickly-expanding market, and entering a market, risking substantial future damages

14  and harm to a relationship with its customers and retailers.

15     Finally, in *Rhoades*, the Ninth Circuit reversed the district judge's order dismissing a trademark

16  declaratory relief action on subject matter jurisdiction grounds.  The court held that the allegations in

17  the first amended complaint alleged a true case or controversy that established subject matter

18  jurisdiction.  In *Rhoades*, the declaratory judgment plaintiff was a cosmetics and skin care company that

19  patented and distributed a number of products.  It attempted to register marks with the USPTO to use

20  with a number of its product lines.  Defendant Avon was a well-known beauty products company that

21  also distributed a skin care product line.  Avon contested five of the plaintiff's registration applications

22  for marks in administrative proceedings, and requested cancellation of the registration of two more of

23  the plaintiff's marks.  Defendant Avon's lawyer threatened a trademark infringement suit at a meeting,

24  wrote a letter threatening additional proceedings or litigation, and told counsel that Avon would not

25  give up its rights to damages.  Under these circumstances, the court found that the plaintiff's

26  "perception of threats was more than reasonable." *Id*. at 1158.  Thus, Plaintiff had adequately plead a

27  case or controversy for purposes of surviving a Rule 12(b)(1) motion to dismiss on subject matter

28  / / /

1    jurisdiction grounds.  However, as indicated, it was undisputed that the plaintiff was manufacturing,

2    distributing, and advertising a product line using terms the defendant alleged infringed its mark.

3            In this case, Defendant's motion to dismiss does not claim that Plaintiff's amended complaint

4    fails to establish a real and reasonable apprehension of litigation.  Rather, the motion to dismiss focuses

5    on the second prong of the Federal Circuit's two-prong test in its 1987 decision in *Windsurfing*.  Under

6    the second prong of the test, a declaratory judgment plaintiff must have engaged in a course of conduct

7    which brings it into adversarial conflict with the declaratory judgment defendant.  828 F.2d at 757.  In

8    *Windsurfing*, the Federal Circuit assumed, without deciding, that defendant AMF reasonably feared

9    litigation if it began using "Windsurfer" in connection with its products.  However, because the record

10   contained no evidence that AMF engaged in any course of conduct that brought it into adversarial

11   conflict with the plaintiff, the court found that AMF had failed to satisfy the second prong of the test.

12   In its complaint and counterclaim, AMF alleged only that it was interested in using the mark

13   "Windsurfer" and "Windsurfing" in connection with its product.  AMF acknowledged that it had

14   avoided using "Windsurfer," and it had instructed its dealers not to use the term.  The Federal Circuit

15   concluded that AMF's "mere desire" to use "Windsurfer" and "Windsurfing" in connection with its

16   product did not constitute a course of conduct placing it in a legally adversarial conflict with plaintiff

17   Windsurfing International, Inc. ("WSI") respecting WSI's trademark registration.  The court therefore

18   lacked subject matter jurisdiction to decide AMF's claim for cancellation of WSI's registrations.

19           Plaintiff's opposition to the motion to dismiss asserts that the Ninth Circuit has expressly

20   rejected the Federal Circuit's two-part test for determining whether a case or controversy exists and

21   instead only requires a showing that a declaratory-judgment plaintiff have reasonable apprehension of

22   litigation.  In *MedImmune*, the Supreme Court acknowledged that is prior precedents had not drawn the

23   brightest lines between declaratory judgment actions which stated Article III jurisdiction and those that

24   did not.  *MedImmune* reaffirmed however, that a totality-of-the-circumstances test determines whether a

25   declaratory judgment plaintiff has met its burden of establishing Article III jurisdiction.  Plaintiff's

26   opposition to the motion to dismiss in this case does not address Defendant's arguments that it is not

27   actually using the mark in suit.  Plaintiff's opposition also does not suggest that it could amend the

28   amended complaint to allege additional jurisdictional facts.  Finally, Plaintiff's opposition to the

14

1   motion to dismiss does not seek leave to amend in the event the court determines its jurisdictional

2   allegations are deficient.  This court will therefore examine the jurisdictional facts Plaintiff has plead in

3   the amended complaint.

4          At the motion to dismiss stage, the court must accept the facts alleged in the complaint as true.

5   Accepting the facts alleged in the amended complaint as true for purposes of this motion, this court

6   finds the Plaintiff has not met its burden of establishing an Article III case or controversy.  The Plaintiff

7   does not allege that it is actually using the mark in suit or that is has invested substantial resources to

8   use or market the mark.  The allegations of the amended complaint are conclusory and, at times,

9   contradictory.  Paragraph 3 of the amended complaint alleges that Plaintiff owns the trademark

10  Tradebay which was approved for publication by the USPTO on January 27, 2010.  Paragraph 4 alleges

11  "Plaintiff has made and/or intends in the future to make considerable expenditures to protect its rights

12  in and to Plaintiff's Approved Mark."  Paragraph 5 alleges in conclusory manner that the mark is "an

13  asset of considerable value to Plaintiff."  Plaintiff also alleges it "is offering and/or intends to offer

14  computerized online services" for various purposes under its mark.  *Id*. ¶ 9.  Finally, the amended

15  complaint alleges that the acts of the Defendant "seriously impair Plaintiff and place into serious and

16  substantial jeopardy the most reasonable rights and interests of Plaintiff in and to Plaintiff's Approved

17  Mark."  *Id*. at 18. The amended complaint's allegations are fairly detailed and specific with respect to

18  Defendant's claims that Plaintiff's mark is confusingly similar and infringes its trademark rights.

19  However, the amended complaint's allegations are vague, conclusory and contradictory about whether

20  Plaintiff is actually using the mark or has expended significant resources to develop and use the mark.

21         As indicated, Plaintiff's opposition to the motion to dismiss does not request leave to amend the

22  amended complaint to allege additional jurisdictional facts.  The jurisdictional facts that have been

23  plead are vague, conclusory and contradictory with respect to whether or not the Plaintiff is using, has

24  used, or merely intends to use the mark if it receives an opinion from the court that it may do so without

25  infringing Defendant's rights.  This court therefore concludes that this case involves a would-be

26  competitor seeking to test the waters by asking for an advisory opinion on an adverse mark, and that the

27  Plaintiff has not plead sufficient jurisdictional facts to establish a substantial case or controversy.

28  Specifically, Plaintiff has not plead sufficient jurisdictional facts to establish a case or controversy of

sufficient immediacy and reality to warrant issuance of a declaratory judgment.  For purposes of evaluating this motion to stay, this court is convinced the Plaintiff is unable to state a claim for relief because this court lacks subject matter jurisdiction under Article III.

Turning to the motion to stay, the motion to dismiss raises the court's subject matter jurisdiction.  It is potentially dispositive of the entire case.  Plaintiff does not claim that it needs any discovery to oppose the motion to dismiss.  The motion raises no factual issues, and will be decided purely on issues of law.  This case is currently at the pleading stage and the Ninth Circuit has held that the purpose of Rule 12(b)(6) is to enable Defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery.  For all of these reasons, the court concludes that a stay of discovery while the motion to dismiss is pending will best accomplish the objectives of Rule 1, to secure the just, speedy and expense of determination of this action.

For all of the foregoing reasons,

**IT IS ORDERED** that:

1.    Defendant's Motion to Stay Pending Disposition of Motion to Dismiss (Dkt. #21) is **GRANTED**.

2.    In the event the district judge denies the motion to dismiss, the parties shall meet and confer and submit a proposed discovery plan and scheduling order which complies with LR 26-1(e), with discovery deadlines measured from the date of decision of the motion to dismiss.

Dated this 12th day of December, 2011.

_____
Peggy A. Leen
United States Magistrate Judge

16